May it please the Court, my name is Jason Jarvis. I'm Court-Appointed Pro Bono Counsel for the Petitioner, Mr. Luis Alberto Nieto-Obando. The first point I'd like to make this morning, Your Honor, is about the credibility finding. And that's because it's so fundamental to everything else we're going to talk about here this morning. The immigration judge specifically found that Mr. Nieto-Obando's testimony and the evidence he provided was credible. And that means that before this Court, all of his facts and all of the testimony is considered true. Let me pinpoint some of the key facts that Mr. Nieto-Obando's testimony established. First, that Mr. Nieto-Obando was a member of a group, Fundacere, that worked to assist displaced persons in Colombia. Second, that Mr. Nieto-Obando and his father, Mr. Nieto, took in someone named Mr. Bueno, who told them that he was a displaced person and needed a place to stay. And it turned out, after they grew suspicious because this man's family never came to stay with him as he said they would, that after calling the government police, this man actually was a key operative for Front 14, a part of the Fuerzas Armadas, which I'm going to refer to as FARC from now on. Shortly after they exposed him and Mr. Bueno went missing, the Nietos, Mr. Nieto-Obando himself, received a letter identifying both of them as military objectives, which everyone understands in Colombia to be a death threat. A week after that, Mr. Nieto received a telephone call, actually directly from Mr. Bueno, again threatening them with death, and it was at this point that Mr. Nieto-Obando fled Colombia and entered the United States. A few months after that, Mr. Nieto himself received another death threat, again identifying specifically both Mr. Nieto and Mr. Nieto-Obando. And at that point, Mr. Nieto went into hiding, and Mr. Nieto-Obando has not talked to his father since. Now, with that context in mind, it's clear that Mr. Nieto-Obando here is entitled to asylum eligibility. As we know, asylum eligibility requires a showing that someone has been persecuted on account of a protected ground. Here, Mr. Nieto-Obando was both a member of FUNDACER, which assists displaced persons, and which FARC considered to be supportive of the paramilitaries that they're in opposition to, and Mr. Nieto-Obando had either an imputed or real political opinion which was opposed to FARC, and that was shown by the fact that he and his father turned in this FARC operative to the government. He was persecuted in that he suffered at least two specific death threats against himself, potentially a third while he was in absentia in this country. And on account of those two, with those three things in mind, it's clear that his asylum eligibility is established here. Now, I think the government can correct me if I'm wrong when they get up here, but I think there's really two issues about which we disagree. One is whether he was persecuted on account of a protected ground, and two was whether these death threats themselves constitute persecution. To the first issue, I think the IJ and to the government to a lesser extent in its brief really missed the boat. The issue here is not whether Mr. Nieto-Obando had a long history with the organization, whether he was a high-ranking operative in Funda Acer, whether he was moving boxes on the weekend, or he was only doing it for a few hours a week. The issue here is that FARC identified his membership in Funda Acer specifically with his turning over or effectively turning over Mr. Bueno's identity to the government as a covert operative for FARC. That's the specific imputed or real political opinion that he was persecuted on account of. Kennedy. Let's ask you this question. Let's assume that, as you argued, you have established fear, well-founded fear of future persecution. Did the IJ or the BIA make a finding as to whether that was on account of an imputed political opinion, or is that a matter that has to be remanded to the board or the IJ to make that determination? Your Honor, there's two components to that. One is that the IJ found that his membership and his persecution on account of that, on account of question, had not been established based on the facts there. But the second part of the question is looking forward to whether his fear is well-founded is another question I haven't really gotten to yet. We've just been talking about whether he was persecuted in the past. So if this Court finds that what I just – if you accept what I just said, that he was persecuted in the past, then he has a presumptive – a rebuttable presumption that he's entitled to. I went beyond that. I said assume that we were to find that he had a well-founded fear. Yes, Your Honor. Your first step is their past persecution. Right. Which gives you a presumption. If that were all you established, then it would have to go back to have the board determine whether there was a well-founded fear. All you have is a presumption. If this Court were to determine – Now, just a minute. Now, if you went beyond that in your record and established the well-founded fear, then it also has to be on account of a political opinion or an imputed political opinion. Yes, Your Honor. And what I was asking you was whether B.I.J. reached that question and decided that you did or didn't, or whether he didn't resolve that question. Your Honor, honestly, I don't remember specifically from his decision him making a specific finding on that basis. And part of the reason may have been that he didn't really – excuse me – he didn't really reach that well-founded question. And he didn't reach the on account of either. But that doesn't mean that he didn't look at it for purposes of past persecution. And it's really the same question, isn't it? No, it's not. It really isn't the same question. But that's okay. It's your argument. But with respect to past persecution, isn't it apparent that the immigration judge did not make findings with respect to whether it was a matter of political affiliation or membership in a social group, assuming, as obviously the immigration judge did not do, that there was a showing of past persecution? That is, I'm wondering really in supplementation of Judge Reinhart's questions whether those issues weren't alluded to as not determined by the immigration judge in relation to past persecution. Your Honor, I don't think I need to answer your question. I left the question totally unintelligible. No, I'm sure it was intelligible, just not to me. I just don't know the answer to that question. The immigration judge found that the persecution didn't rise to a level where or the death threats didn't rise to a level of actual persecution. And so it's not clear to me whether in looking at whether he was persecuted on account of his membership in that group, he also made any sort of formal determination. I would tend to say no. He didn't find that if he's returned – if you're asking, is he returned to Colombia, will he be persecuted on account of his membership or on account of his political opinion? I don't think that the IJ found one way or another. Yeah. Well, that's not unusual that the IJ will find that there's no persecution either well-founded or past. Therefore, he doesn't reach the question of is it on account of political opinion. And then we have to remand for the board or the IJ to then reach that question. So the question is where did they stop and what issues did they leave open and which did they decide? Yes, Your Honor. Although right here, I'm not sure that you need to remand because you have enough evidence in front of you to compel a finding of past persecution. Well, that's a reasonable position, but it's unfortunately not the one the Supreme Court has adopted. I mean, I like yours better. But we are bound when the board has not decided something, no matter how obvious it is, we're bound to return it to the board to decide. Mr. Jarvis. Go ahead. I was just going to tell you. In framing my unintelligible question, Mr. Jarvis, I had in mind what the immigration judge had to say on page 15 of his opinion with respect to past persecution. The Court believes that in this instance, given the meager evidence before the Court and the fact that there's no evidence that any harm ever came to or has come to either the Respondent or his father from FARC, the Respondent has not met the burden of proof of demonstrating in terms of the objective component that he has a well-founded fear of persecution on account of his membership in either of the two organizations or social groups identified by the Court, committee as a displaced persons or familiar unit or on the basis of political opinion held or imputed to him by FARC. And I guess the question is whether those issues don't remain. I'm sorry. I'm subject to further inquiry on remand, as Judge Reinhart has suggested. Yes, Your Honor. You've used your time. We'll give you a minute on rebuttal if you want. Thank you, Your Honor. Easy. We'll hear from the government. May it please the Court. Rebecca Hoffberg on behalf of Respondent, the United States Attorney General. Mr. Luis Alberto Nieto Abando sought asylum based on a couple unfulfilled threats that he and his father received via telephone and e-mail. May I ask you, I think we know the facts, but what is your view of the I.J.'s opinion? What did he decide and what did he not decide? In this case, the immigration judge really identified very clearly that it was on account that he was alleging on account of particular membership in a particular social group and political opinion. And he did that on pages 24 and 34 of the decision. Before we get to that. Yes. Did he decide there was no well-founded fear of persecution? Yes. He decided that the fear was not objectively reasonable. He was not leaving up air. All right. So you did that. Yes is my answer to the question. He did decide the issue of well-founded fear, but he did not decide the issue of whether it was on account of political opinion? Well, the way that he phrased it, and I think Judge Pollack really pointed this out, is that he wasn't questioning whether this would have been on account of a political opinion or membership in a particular social group because he was focusing on the objective reason of whether this was objectively reasonable given his circumstances in the situation. And the board's decision emphasizes that, is that the decision really didn't have to do with whether this was on account of a protected ground. It was whether the threats amounted to past persecution and whether the fear was objectively reasonable. So this case, I think they sort of assumed that this would have been on account of a protected ground in the way that they phrased their decisions. On pages 24, the immigration judge specifically says that this is based upon, you know, if he returns to Columbia, he's claiming that his fear would be based upon membership in a particular social group. And then he identifies later on then, and political opinion, he's saying, as Judge Pollack pointed out, on account of either his membership in the organization or the social group identified by the court. So basically, this was the issues here is whether these unfulfilled threats under this court's precedent amount to past persecution that would form the rebuttal. Or a well-founded fear. Or whether it's objectively reasonable. And that's... Let me try to get an answer to the question. It's really hard to pose because of the way the opinion is written. If we were to fundamentally disagree with the I.J. as to his basic ruling, whatever that was, what would have to be remanded to the I.J. for further determination, if anything? The only thing that you need to determine first if there was past persecution. It's the government's position that under this court's standards, there can't be. Let's assume we did. Okay. Right. That's one. So there was no past persecution. No. So if you think that the I.J. messed up on that issue, that would have to be remanded because that would trigger a rebuttable presumption of a well-founded fear. In this case, the immigration judge made two very clear conclusions. He said these unfulfilled threats aren't past persecution. Look at this court's precedent. You've seen cases where it's not. Let's just get to the issue. Yeah. Did he also decide that there was no well-founded fear of persecution? Yes, he did. Okay. He said there's no objectively good reason why he would still fear based on his position. And I understand the president's position. Okay. So he decided no well-founded fear. Yes. Then did he decide that the persecution, if any, was on the basis of political opinion? That's what his opinion indicates. And the board's decision afterwards also makes his decision actually clear because it says we agree with the, you know, it's agreeing with the immigration judge's conclusion that he didn't meet his burden, So, in other words, did he decide everything there is to decide? Yes, he did. For eligibility. Well, what he decided was all that was necessary for making his decision. He decided the threshold question of whether or not there was past persecution. Right. And so you're telling... Well, wait a minute. You told us, you're speaking for the government, that he decided more than that. He decided that there was also no well-founded fear and that if there were persecution, it was on the basis of political opinion. Well, basically, he didn't have to make that... I know he didn't have to make it. Right. You said he decided every issue necessary to decide. Yes. Well, because he's saying... The question of eligibility. Right. And the board's decision... Perhaps he should wait until Judge Reinhardt has completed his question. Sorry. All right. The government's position is, whatever anyone else's position may be, that he decided all of the issues necessary to determine eligibility. Yes. Okay. Thank you. Yes. And so going back to the nature of his decision, as far as not amounting to the past persecution, this Court's... He cites two cases in his brief that predate this Court's decision in Lim, and Lim really significantly undermines any of the previous decisions that said that threats alone can constitute past persecution. And it's really without more, and this Court has identified so many situations where the more is present, and that's when there's actual physical encounter, when someone is threatened in person or with a menacing attempt or actual harm or suffering that this Court has outlined. And so without any of those other factors present, that's why these threats alone... There were only... There was a letter and... There were two letters and a phone call, and he was actually already departed from Columbia at the time the second letter was issued, and they seem to be primarily directed at his father. And that's what goes back to his position in the organization. Opposing counsel says, well, that doesn't really matter, but it really does, because that demonstrates how likely it is or how objectively reasonable it is that he would be worried that his past participation, if it was very limited, and for a very, you know, limited amount of time, then it wouldn't create the fear that you would have to show to show that a fear is well-founded. Let me make sure I understand the government's position here. Are you saying that the I.J. essentially found that even if there had been past persecution, there was no well-founded fear of future persecution? I think basically that's what it amounts to, is that he made both findings, but he had to make the past persecution finding first. And then he said that oftentimes past persecution, what goes toward past persecution, this court has looked directly to see whether it's well-founded. Rather than making the finding, well, threats amount to past persecution, this court, like in Lim, said let's see if that actually indicates the well-founded fear as opposed to making the finding of the past persecution. And so that's essentially what this court has outlined, is that you can go ahead and look at these same threats and look at them under both sets of the legal standpoint. And so what he did was say, this isn't past persecution. Now I'm going to look at them in terms of what it means for future persecution. Okay. And so that's what he decided here, is that when you look at cases like Lim and its progeny, that's where he was making his reasoning, just like in Lim. And so the cases that Petitioner cites to ---- Ms. Hopberg, could you help me out with this? Yes. If this court were to conclude that the immigration judge was in error with respect to future persecution, that there was not substantial evidence to support that conclusion, it then would be up to this panel to do what? To simply direct that the Petitioner should be granted the relief that he seeks, not to be sent away, that no remand would be required. Is that right? Unless you feel that there was legal error in terms of how the immigration judge evaluated that well-founded fear. If you think that he used, for example, the wrong standard, or if you thought that he misunderstood the facts somehow, but generally if substantial evidence supports his conclusion, then this court would affirm and deny the petition for review. If you think that that decision was wrong for reasons that need to be corrected by the agency, you would remand it. If you think it's just wrong because substantial evidence, that result is not compelled by the evidence, then you would grant the petition for review. But in these circumstances, there is ample evidence. I mean, you have to consider the standard of review here is whether you would be compelled to conclude, contrary to the agency's decision, that based on the information he presented in 2002, whether now he has an objectively well-founded fear, given his family members are still there, given that he had limited. We're turning it to the procedural question. And I think you answered Judge Pollack's question. If we decided that it was not substantial evidence and a different result were compelled, Judge Pollack's asking what is a different result. And I think you've made it clear, despite being asked several times to restate your position, I think you made it clear that the government's position is that if we disagreed with everything, he would be eligible for asylum. Now, normally the I.J. doesn't go beyond the question of eligibility. Here the I.J. went even beyond that and said if the court is in error and that he should be granted asylum on the basis of well-founded fear, then the court would simply note that under matter of Pula there is no negative consideration that would militate against a grant of asylum, particularly since the fingerprint results of the respondent are negative. That's because asylum is ultimately also a discretionary decision. Yes. Well, that's what I was asking you.  and said there are no negative considerations that would militate against a grant of asylum, which goes beyond eligibility to the discretionary aspect. Do you think that ruling on the discretionary aspect, what's the status of that? Basically it would mean that if this court would decide or, you know, if it goes back and the agency decides differently, then that wouldn't be something that would prevent him in the end from being eligible for asylum. So the discretionary decision is the last ultimate finding that the judge can make, and so he wasn't forced to make it in this decision at all. You're right. It was an unnecessary decision. He obviously is Well, what I was saying is he did in fact say if he were eligible, there's no reason not to exercise the discretion in his favor. Right. It's essentially dicta because he found him ineligible, and so he was just saying that if it came down to the ultimate discretionary decision, I would find in favor of him. The fingerprint revealed no criminal history, no other things that would Well, he went down the line issue by issue by issue. Right. And then he said I would grant the discretionary relief. He would grant them if he were statutorily eligible for asylum, which he was not, and so the immigration judge did do a very thorough opinion. That's why it's the government's position that he did answer all the necessary issues and came to the conclusion he even went above and beyond the issues he had to address in that manner. He came to the conclusion that he wasn't eligible, but if we disagreed and said he was eligible, then he would grant the relief, the discretionary relief. If he were eligible and showed the requirements, he wouldn't be precluded based on that discretionary determination. That's correct. Your Honor, I see that my time is up. For all the reasons that we've stated, Petitioner failed to show past persecution or a well-founded fear of persecution, and therefore his asylum applications should stand undisturbed as denied. Thank you. Thank you. Do we stay at anything? Do you really feel that you want to make a rebuttal? I just want to make one quick point, and that's to the quote that you were reading, Judge Reinhart, earlier. This is why I think I was having trouble answering your question about whether he had found or not that there was a well-founded fear. What it says is the court is in error, then he should be granted asylum on the basis of a well-founded fear of persecution, since it is almost impossible to argue severe past persecution under the facts presented. It kind of conflated those questions. That's why I had trouble answering your question as to whether he was. Well, I think the government answered it for you very well. Thank you. Thank you.
judges: Schroeder, Reinhardt, Pollak